## In re PAYNE.

District Court, S. D. Iowa, W. D.    June 9, 1927.

Supplemental Opinion, June 25, 1927.

### No. 5475.

1. **Bankruptcy ⬅403—On bankrupt's death, after adjudication and qualification of trustee, surviving wife held entitled to distributive share in his realty under state statute (Bankruptcy Act, § 8 [Comp. St. § 9592]; Code Iowa 1924, § 11990).**

Under Bankruptcy Act, § 8 (Comp. St. § 9592), where bankrupt resident of Iowa died after adjudication and qualification of trustee, but before conclusion of proceedings in bankruptcy, his surviving wife *held* entitled to the distributive share in bankrupt's realty allowed to her under Code Iowa 1924, § 11990, as against contention that adjudication in bankruptcy was a "judicial sale" within latter act.

2. **Bankruptcy ⬅403—On bankrupt's death after adjudication and qualification of trustee, surviving wife held entitled to one year's support, on proof of necessity (Bankruptcy Act, § 8 [Comp. St. § 9592]; Code Iowa 1924, § 11923).**

Under Bankruptcy Act, § 8 (Comp. St. § 9592), where bankrupt resident of Iowa died after adjudication and qualification of trustee, but before conclusion of proceedings in bankruptcy, his surviving wife *held* entitled to sufficient of bankrupt's property of such kind as is appropriate to her support for 12 months from bankrupt's death, under Code Iowa 1924, § 11923, on adequate showing of necessity therefor.

### On Supplemental Opinion.

3. **Bankruptcy ⬅20(2)—Bankruptcy adjudication annulled state receivership and deed from bankrupt and wife in nature of general assignment, and wife's dower right was not affected.**

Involuntary bankruptcy adjudication annulled state court receivership of bankrupt's property and deed from bankrupt and his wife, conveying realty to receiver "for purpose of making it convenient for" receiver "to wind up the affairs of grantor," which deed, though not technically a general assignment under the state

statute, was in nature of general assignment, and giving of such deed did not, therefore, affect dower right of bankrupt's widow.

In Bankruptcy. In the matter of Cheals W. Payne, bankrupt. On petition of Mary A. Payne, bankrupt's widow, to review an order of the referee denying her application for allowance and admeasurement of a widow's distributive share in bankrupt's realty and for the allowance of her year's support under state statutes. Referee's order reversed, with directions.

Geo. H. Mayne, of Council Bluffs, Iowa, for trustee.

A. P. Barker, of Clinton, Iowa, for widow.

SCOTT, District Judge. This matter came before the court upon the petition of Mary A. Payne, widow of Cheals W. Payne, bankrupt, to review an order of the referee in bankruptcy denying the application of petitioner for allowance and admeasurement of a widow's distributive share in the real estate of the late bankrupt, and for the allowance of her year's support under the statutes of Iowa.

From the certificate of the referee it appears that, Cheals W. Payne having been adjudged a bankrupt on May 11, 1923, upon an involuntary petition filed April 20, 1923, a trustee was duly appointed and qualified on May 26, 1923; that the bankrupt died on June 23, 1923; that Mary A. Payne is the surviving spouse of the bankrupt, and on July 21, 1923, filed her petition setting forth that the bankrupt at the time of his adjudication was the owner of some 950 acres of land in Iowa, subject to incumbrance, and praying for the allowance and admeasurement of her distributive share and for her year's support under the statutes of Iowa. The matter was heard before the referee and by the referee ordered that the petition of the widow be denied.

[1] The record presents the questions:

First, whether a surviving spouse, in case of the death of the bankrupt after adjudication and the election and qualification of a trustee, and before the conclusion of the proceedings in bankruptcy, is entitled to the distributive share in the real property possessed by the bankrupt at the time of the filing of the petition in bankruptcy under section 3366, Code Iowa 1897 (now section 11990, Code 1924).

Second, whether in like circumstances, and if necessary to her need, the surviving spouse is entitled to sufficient of the property of the bankrupt of such kind as is appropriate to support her for twelve months

from the time of the bankrupt's death under section 3314, Code Iowa 1897 (now section 11923, Code 1924).

Section 3366, Code 1897, provides that "one-third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, which have not been sold on execution or other judicial sale, and to which the wife had made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him. The same share of the real estate of a deceased wife shall be set apart to the surviving husband. All provisions made in this chapter in regard to the widow of a deceased husband shall be applicable to the surviving husband of a deceased wife."

The trustee, respondent herein, contends —and such contention seems to have been adopted by the referee—that the words "or other judicial sale," in the section above quoted, embraces an adjudication in bankruptcy; that is, that an adjudication in bankruptcy followed by the election and qualification of a trustee, is equivalent to a judicial sale within the meaning of the section referred to. The reasoning is that, the adjudication and qualification of the trustee having taken place before death, the real property was thereafter sold on judicial sale, and thereby ceased to be subject to admeasurement under the section referred to. Counsel on both sides concede, and they are correct so far as I know, that the Supreme Court of Iowa has not decided the particular question here to be considered.

Counsel for the trustee relies particularly upon the holding of the Supreme Court in Taylor v. Voss, 271 U. S. 176, 46 S. Ct. 461, 70 L. Ed. 889, wherein certain statutes of Indiana were under consideration, together with the decisions of the Supreme Court of that state construing the same. Counsel for petitioner contends that section 8 of the Bankruptcy Act (Comp. St. § 9592) controls the situation, and that the adjudication and subsequent qualification of the trustee is not equivalent to a judicial sale within the meaning of the Iowa statute.

Section 8 of the Bankruptcy Act of 1898 provides: "The death or insanity of a bankrupt shall not abate the proceedings, but the same shall be conducted and concluded in the same manner, so far as possible, as though he had not died or become insane: Provided, that in case of death the widow and children shall be entitled to all rights of dower and allowance fixed by the laws of the state of the bankrupt's residence."

The particular provision of the statute of Indiana considered in Taylor v. Voss, supra, pertinent to be considered here, did not deal with the rights of a survivor on the death of a spouse. The Indiana statute provided: "If a husband die * * * leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors: Provided, however, that where the real estate exceeds in value ten thousand dollars, the widow shall have one-fourth only, and where the real estate exceeds twenty thousand dollars, one-fifth only, as against creditors." Rev. Stat. Ind. 1881, § 2483. And then again: "In all cases of judicial sales of real property in which any married woman has an inchoate interest by virtue of her marriage, * * * such interest shall become absolute and vest in the wife in the same manner and to the same extent as such inchoate interest of a married woman now becomes absolute upon the death of the husband, whenever, by virtue of said sale, the legal title of the husband .* * * shall become absolute and vested in the purchaser thereof." Rev. Stat. Ind. 1881, §§ 2508, 2509.

In Taylor v. Voss, supra, the latter section of the statute was invoked, it being contended that the adjudication in bankruptcy, followed by the appointment of the trustee, operated as a judicial sale, and entitled the wife of the bankrupt to her distributive share as upon the death of the bankrupt and notwithstanding he was still in health. The Supreme Court of the United States in that connection followed the long-settled rule of the Supreme Court of Indiana, saying: "In the absence of any conflicting provision in the Bankruptcy Act, the question of a wife's interest in the bankrupt's property is governed by the local law. See Stellwagen v. Clum, 245 U. S. 605, 38 S. Ct. 215, 62 L. Ed. 507. And, following the construction placed upon the Indiana statute by the courts of that state, we conclude that the adjudication of Erskine as a bankrupt, when followed by the appointment of the trustee in bankruptcy, operated as a 'judicial sale' of his real estate within the meaning of the statute, and made absolute his wife's interest therein."

Section 8 of the Bankruptcy Act was not considered in Taylor v. Voss, for the obvious reason that the court was not dealing with a case involving the death of a bankrupt. The provisions of section 8 of the act could in no way conflict with the conclusion in that case.

Counsel for petitioner, among a large number of other cases, cites, but does not stress, Hull v. Dicks, 235 U. S. 584, 35 S. Ct. 152, 59 L. Ed. 372. It seems to me that that case is particularly pertinent in the present instance. In that case Dicks, a resident of Georgia, was adjudicated a bankrupt; Hull was elected trustee and took possession of the bankrupt's property; three weeks later Dicks died leaving a surviving spouse; the spouse applied to the referee for an order directing the trustee to pay over an amount allowed by a state court of ordinary; her application was denied and that ruling reversed by the District Court. On appeal the Circuit Court of Appeals certified the following question to the Supreme Court:

"Where a resident citizen of Georgia has been duly adjudicated a bankrupt and dies after such adjudication and after the appointment, qualification, and partial administration of the trustee, is the estate vested in the trustee under section 70 of the Bankruptcy Act of 1898 [Comp. St. § 9654] chargeable under section 8 of the same law, or otherwise, with the allowance for a year's support of the widow and minor children, as provided in the laws of Georgia?"

Answering the contention of appellant, the court in Hull v. Dicks said:

"Construing the statute as a whole, it will be seen that, while section 70 * * * of the Bankruptcy Act vested title in the trustee primarily for the benefit of the creditors, there was an exception in favor of the bankrupt himself, and the transfer was also subject to a condition in favor of his family, if he died before the proceedings ended. If the bankrupt elected to claim a homestead the exempt property, even though it had passed to the trustee, would, after identification and appraisal, be turned back into his possession. Chicago, etc., R. R. v. Hall, 229 U. S. 511, 515 [33 S. Ct. 885, 57 L. Ed. 1306]. The trustee's title was also subject to the condition that, if the bankrupt died during the pendency of the proceedings, the widow and children would be entitled to receive the allowance given them by the laws of the state of his residence. This latter limitation on the trustee's title was in connection with legislation on the subject of abatement.

"For the statute seems to assume that, in the absence of a statutory provision to the contrary, the death of the bankrupt would have abated the proceedings. In that event the property, although the title thereto had been previously vested in the trustee, would have been surrendered to the bankrupt's personal representatives, who would then have been in possession of an estate out of which, under the Georgia Code, a year's support

could have been set apart to the widow and children. Congress need not have made any change in the general law, but, as in the Act of August 19, 1841, c. 9, 5 Stat. 440, could have allowed the suit to abate on the death of the bankrupt; or, as in the Act of March 2, 1867, c. 176, 14 Stat. 517, 522, § 12, it could have permitted, without requiring, an abatement; or, as in the Act of April 4, 1800, c. 19, 2 Stat. 19, 27, § 19; it could have made a mandatory provision that the proceedings should continue if the bankrupt died 'after commission sued out'; or it could have legislated, as in section 8 of the present statute  *  *  *  where Congress went further than in any of the previous bankruptcy laws, and made a universal and mandatory provision that 'the death  *  *  *  of a bankrupt shall not abate the proceedings.' That sweeping declaration, however, was coupled with the proviso that 'in case of death the widow and children shall be entitled to all rights of dower and allowance fixed by the laws of the state of the bankrupt's residence.'

"Section 8, with these two clauses, prevents, on the one hand, the loss and inconvenience to creditors resulting from an abatement, while at the same time avoiding the hardship of depriving the widow and minor children of a right to which they would have been entitled, if the suit had abated on the death of the husband and father. The statute makes no exception or qualification—after the proceedings have been commenced they are not to be abated by death. And the proviso clearly indicates an intention to make the preservation of the widow and children's right to the allowance as broad as the prohibition against the abatement of the suit. Inasmuch as the proceedings did not abate if the death of the bankrupt occurred after filing the petition and before the election of the trustee, neither was the right to the allowance lost if the bankrupt died after such election and at a stage of the proceedings where the title had, by operation of law, vested in the trustee. For such title, whenever it accrued, was subject to the condition that the assets, in the hands of the trustee, should be charged with the payment of the allowance to which on the death of the bankrupt, the widow and children were entitled under the laws of the state of his residence."

It will be seen that in Hull v. Dicks, the Supreme Court held that the title taken by the trustee was a conditional one; that is, subject to the conditions of the proviso in section 8. And this pertinent language will be noted: "And the proviso clearly indicates an intention to make the preservation of the

widow and children's right to the allowance as broad as the prohibition against the abatement of the suit." Now, how could the proviso be as broad as the abatement, if the adjudication itself must be construed to defeat the proviso? Surely, if the proceeding abated, no judicial sale would be left, and the wife would take her distributive share in the real estate and all other allowances. Now, the proviso is "as broad as the prohibition against the abatement of the suit," and therefore leaves the widow and children in the same position as though the suit had abated.

An entirely different situation was present in Taylor v. Voss. There the Indiana statute merely accelerated the ripening of the widow's dower and in no way conflicted with any provision of the Bankruptcy Act. The Supreme Court said in that case: "In the absence of any conflicting provision in the Bankruptcy Act the question of a wife's interest in the bankrupt's property is governed by the local law." There was no conflicting provision in the Bankruptcy Act applying to that case. But surely in the present case, as in Hull v. Dicks, supra, to give the words "or other judicial sale" in the Iowa statute the interpretation contended for would bring it in conflict with the proviso in section 8 of the Bankruptcy Act. To hold otherwise would stultify the pronouncement in Hull v. Dicks that the proviso is "as broad as the prohibition against the abatement of the suit."

[2] I am constrained to the conclusion that in the instant case the widow is entitled to her distributive share in the real estate of the bankrupt in Iowa, that being the state of the bankrupt's residence. This brings us to the second question presented on the record. Section 3314, Code of Iowa 1897 (now section 11923, Code of 1924), provides: "The court shall, if necessary, set off to the widow and children of the decedent under fifteen years of age, or to either, sufficient of his property, of such kind as is appropriate to support them for twelve months from the time of his death, and may, on the petition of the widow or other person interested, review such allowance and increase or diminish the same, and make such orders in the premises as shall be right and proper."

For the reasons herein stated respecting the subject of the widow's distributive share in the real estate, I think the widow equally entitled to support for 12 months from the time of the bankrupt's death, assuming, of course, that adequate showing of necessity has been made.

The order of the referee under review is

reversed, and the referee directed to proceed in conformity with this opinion. To which the trustee duly excepts.

## Supplemental Opinion.

Since the filing of the original opinion the trustee has filed what he denominates "Petition for New Trial." The pleading in fact merely calls attention to the fact that there has been submitted with the petition for review a stipulation of facts and consent that on the hearing on the petition for review this court might decide an additional question as a court of first instance; that when the matter was under previous consideration my thought was that that question ought to go to the referee as a court of first instance, with the privilege to come before the District Court on a petition for review. I therefore decided only the question certified for review. However, in view of the stipulation and the agreement as to all facts, I see no insurmountable obstacle to my deciding it in response to the present petition.

[3] The stipulation shows: That on April 7, 1923, in an action pending in the district court of Iowa for Woodbury county, one E. B. Spottswood was appointed receiver of the property of the bankrupt, Cheals W. Payne. That two days later Cheals W. Payne and Mary A. Payne, his wife, executed to said Spottswood, as receiver, a deed to the real estate in question. That the deed recites: "This deed is given for the purpose of making it convenient for E. B. Spottswood, receiver, to wind up the affairs of grantor, C. W. Payne." That on April 23, 1923, the petition in involuntary bankruptcy was filed, which alleged: "That within four (4) months preceding the filing of this petition, and on or about the 7th day of April, A. D. 1923, the said C. W. Payne, while insolvent, committed an act of bankruptcy, in that he did on said date make a general assignment for the benefit of his creditors to one E. B. Spottswood, who had, until the time of said general assignment, been an employee in the Valley Bank under the designation and title of vice president thereof, and that the said C. W. Payne, being insolvent, did on or about April 7, 1923, apply for a receiver or trustee for his property, and that the said E. B. Spottswood has been appointed as receiver, as aforesaid, and that because of the insolvency the said E. B. Spottswood has been put in charge of his property under the laws of the state of Iowa, in an action or proceedings pending in Woodbury county, Iowa." That under said involuntary petition, on May 11, 1923, Cheals W. Payne was adjudicated a bankrupt, and a trustee elected. That after such adjudication Spottswood, the receiver in the state court, without order of court and after the receivership was closed, executed and delivered a quitclaim deed to the real estate in question to the trustee in bankruptcy.

It is now urged by the trustee that Mary A. Payne, by joining her husband, Cheals W. Payne, in the deed to Spottswood, as receiver, for the purposes recited, thereby irrevocably relinquished her right of dower, and that the quitclaim deed later executed and delivered by Spottswood to the trustee had the legal effect of vesting in the trustee any inchoate right of dower which she might theretofore have had.

Mary A. Payne, through her counsel, contends that the adjudication in bankruptcy of Cheals W. Payne annulled the receivership in the state court, and also the deed made to such receiver "for the purpose of making it convenient for E. B. Spottswood, receiver, to wind up the affairs of grantor." The deed in question, while not technically a general assignment under the Iowa statute, was of the nature of a general assignment, and was relied upon as such to effect the adjudication in bankruptcy.

I am of opinion that the adjudication had the effect of annulling, not only the receivership in the state court made effective because of the insolvency of said Cheals W. Payne, but the deed by Payne and his wife to the receiver also. I think that, on the entry of the adjudication in bankruptcy and election and qualification of the trustee, the title to the estate of Cheals W. Payne, including the real estate in question, vested in the trustee as of the date of the filing of the involuntary petition in bankruptcy. And, such being the case, the quitclaim deed thereafter executed by Spottswood to the trustee conveyed nothing. I think, however, that the trustee took title to the real estate situated in the state of Iowa upon the condition referred to in the original opinion and specified in Hull v. Dicks, 235 U. S. 584, 35 S. Ct. 152, 59 L. Ed. 372.

Counsel on neither side has cited me any direct authority on the question under consideration. I think, however, that the Circuit Court of Appeals of the Sixth Circuit decided the principle in Re Lingafelter, 181 F. 24, 32 L. R. A. (N. S.) 103. In that case the bankrupt and his wife had made a mortgage which, after the adjudication of the husband and title holder, was set aside as a preference. The referee then ordered the trustee to sell the real estate free and clear of the dower interest of Mrs. Lingafelter, but reserved the question of who was entitled to the dower interest

for future decision. The trustee sold the real estate free of dower, and the court determined the value of the dower interest to be in a certain sum. Circuit Judge Warrington, speaking for the court, said:

· "The single issue is whether this money shall be paid to Mrs. Lingafelter or to the receiver of the Homestead Company. It is insisted on behalf of the receiver that as between the Lingafelters and the Homestead Company the mortgage is valid, and that the wife can claim no part of the proceeds of sale until the mortgage is paid. The theory is that the mortgage was no more than a voidable preference, and that this was simply a name, unless avoided at the instance of creditors.

"This seems to us to overlook the necessary effect of the order vacating the husband's conveyance, upon his wife's release of dower. The transaction concerned the husband's debt, and, as regards the present question, his property alone. The Homestead Company demanded the mortgage, and Lingafelter and his wife yielded to the demand. The object manifestly was to apply the whole property, free of dower, exclusively to the payment of the debt due to the company. The very contention that the mortgage is still valid as between the Lingafelters and the company impliedly concedes that the purpose of the mortgage could not have been accomplished, except by the joint action of the husband and wife. Plainly the husband could have conveyed his estate in the land through his own separate act, taken independently of any act of his wife; but it is not claimed that the wife could have acted in a corresponding manner with respect to her right of dower."

The court held that the relinquishment of dower by the wife fell with the mortgage. And it seems to me that in the instant case the receivership and deed and all proceedings in connection with the receivership fell together. I therefore conclude that the circumstance of the deed from the bankrupt and his wife to the receiver does not now affect the right of the widow to dower.